IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT ODOM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-0579-D |
| VS. | § | |
| | § | |
| KROGER TEXAS, L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion for summary judgment presents questions concerning the availability of an ordinary negligence claim to an employee injured on the premises of his employer—a "non-subscribing employer" under the Texas Workers' Compensation Act ("TWCA")—when he slipped in an icy parking lot while performing a task at the direction of his employer.  Among the questions presented is whether the employee is limited, as the defendant-employer maintains, to a premises liability claim or can pursue a negligence claim of the type available against a non-subscribing employer.  Concluding that the employee can pursue a negligence claim and that there are genuine issues of material fact that preclude summary judgment, the court denies summary judgment as to that claim.  Concluding that the employee has failed to raise a genuine fact issue as to his gross negligence claim, the court grants summary judgment dismissing that claim.

I

This is an action by plaintiff Scott Odom ("Odom") against his employer, defendant Kroger Texas, L.P. ("Kroger"), for negligence and gross negligence. Odom alleges that he slipped in an icy parking lot while performing tasks for Kroger.[1]  On the night prior to the incident, an ice storm came through the area causing an accumulation of ice on the ground. Odom lived about one block away from the store, and on the day of the incident, he walked to work. That afternoon, the store's co-manager, Michael Yates ("Yates"), who was aware that the ice posed an unsafe condition, ordered Odom to retrieve shopping carts from the parking lot. Kroger did not provide Odom special training or safety equipment for retrieving shopping carts under these conditions. While walking toward the first cart, Odom slipped on the ice, fell, and sustained injuries.

Odom brings claims for negligence and gross negligence against Kroger based on four theories: (1) Kroger hired careless or incompetent employees who ordered Odom to retrieve the shopping carts in the face of an unnecessary risk; (2) Kroger failed to remove the ice from its parking lot; (3) Kroger failed to implement policies and procedures regarding workplace safety; and (4) Kroger failed to provide proper work equipment to be used in icy conditions. Kroger moves for summary judgment, contending that Odom cannot recover under any of

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Odom as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

these theories.  Odom opposes the motion.

## II

Because Odom will bear the burden of proof at trial on his claims of negligence and gross negligence, Kroger can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Once Kroger does so, Odom must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Odom's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Odom's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if Odom fails to meet this burden.  *Little*, 37 F.3d at 1076.

## III

Although the parties do not disagree about the governing law, the court will discuss it nonetheless because it affects the court's reasoning.  Texas has created a workers' compensation program under the TWCA.

> [The TWCA] was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment . . . .   The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job . . . .  In

> exchange for this prompt recovery, the act prohibits an
> employee from seeking common-law remedies from his
> employer, as well as his employer's agents, servants, and
> employees, for personal injuries sustained in the course and
> scope of his employment.

*Austin v. Kroger Tex. L.P.*, 731 F.3d 418, 423 (5th Cir. 2013) (quoting *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003)).   Employers, however, may opt-out of the workers' compensation program.   *See* Tex. Lab. Code Ann. § 406.002 (West 2006).   When they opt-out, they are considered a "non-subscribing employer," and they forgo certain benefits provided by the TWCA.   In particular, the TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries, and the TWCA deprives the non-subscribing employer of the traditional common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule.   *See* Tex. Lab. Code Ann. § 406.033(a) (West 2006); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 778 (5th Cir. 1994).   "[T]he Texas workers' compensation construct contemplates two systems, one in which covered employees may recover relatively quickly and without litigation from subscribing employers and the other in which non subscribing employers . . . are subject to suit by injured employees to recover for their on-the-job injuries." *Austin*, 731 F.3d at 423-24 (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 187 (Tex. 2012)) (internal quotation marks omitted).

Although Texas law creates an incentive for employers to obtain workers' compensation insurance coverage by eliminating certain defenses, a non-subscribing employer is not automatically obligated to compensate an injured employee.   *See id.* at 424;

*Tex. W. Oaks*, 371 S.W.3d at 192.  "Rather, an employee-plaintiff must prove the elements of his negligence or other claim just as any other litigant, subject to the parameters of section 406.033(d) of the Texas Labor Code."  *Id.* (citation omitted); *see also Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 565 (5th Cir. 2010).  Section 406.033(d) provides that in an action against a non-subscribing employer, "the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment."  Tex. Lab. Code Ann. § 406.033(d) (West 2006).  Subsections 406.033(a) and (d) therefore work together to create a system in which the employee of a non-subscribing employer must prove the negligence of the employer, but the employer cannot rely on the defense of contributory negligence, assumption of risk, or the fellow-servant rule.  *See Austin*, 731 F.3d at 424; *Rentech Steel*, 620 F.3d at 565; *Tex. W. Oaks*, 371 S.W.3d at 187.

Kroger is a non-subscribing employer.  It is undisputed that Odom was injured during the course and scope of his employment.  Therefore, Texas common law governs this action, subject to the parameters of §§ 406.033(a)(1)-(2) and (d).  Odom must prove the negligence of Kroger, but Kroger cannot rely on the defense of contributory negligence, assumption of risk, or the fellow-servant rule.

IV

Kroger moves for summary judgment on Odom's negligence claim, contending that Odom is limited to a premises liability claim and that Kroger had no duty to warn Odom of the hazards posed by the ice in the parking lot.  Odom responds that he is not limited to a

premises liability claim and that Kroger cannot assert that it had no duty to Odom with respect to the ice when Kroger ordered him to confront the danger.  The court first considers Kroger's contention that Odom is limited to a premises liability claim.

A

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (citation and internal quotation marks omitted).  Under the general umbrella of negligence, there are distinct species of claims, three of which are at issue here.  The first type is a premises liability claim, also known as a "premises defect" claim.  The elements of this claim depend on the plaintiff's status with respect to the defendant—i.e., whether the plaintiff is an invitee, licensee, or trespasser.  Under premises liability principles, "employee" is not its own status; rather, Texas courts generally classify employees injured within the course of their employment as invitees.  *See, e.g., Austin*, 731 F.3d at 424 & n.3.

> When the injured party is an invitee . . . [the plaintiff] can recover under the premises liability theory by establishing that (1) the defendant had actual or constructive knowledge of a condition on its premises, (2) the condition posed an unreasonable risk of harm, (3) the defendant did not exercise reasonable care to reduce or eliminate the risk, and (4) the defendant's failure to use such care proximately caused her injuries.

*Rivers v. Kroger Tex. L.P.*, 2009 WL 2596601, at *2 (N.D. Tex. Aug. 21, 2009) (Fitzwater,

- 6 -

C.J.) (citations omitted).

The second type of claim is a negligent activity claim. "Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). In other words, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (footnotes omitted). Although Texas courts consistently refer to premises liability and negligent activity claims as distinct species of negligence, "the lines between [the two types of claims] are sometimes unclear, since 'almost every artificial condition can be said to have been created by an activity.'" *Id.* (quoting *Keetch*, 845 S.W.2d at 264); *see also Austin*, 731 F.3d at 431 n.10 ("Because a negligent activity claim arises out of an injury sustained on a premises, it often overlaps with a premises defect claim."). "The two claims require different jury instructions, and Texas courts generally treat them as mutually exclusive where the same facts support both claims." *Austin*, 731 F.3d at 432 (footnote omitted). Negligent activity cases are resolved by reference to the elements of ordinary negligence—duty, breach, injury, proximate cause—but premises defect cases require proof of the elements discussed above, including the defendant's actual or constructive knowledge of the condition and that the condition posed an unreasonable risk of harm. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997); *see*

*also Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983) (setting forth traditional elements of premises liability claim); *Keetch*, 845 S.W.2d at 266-67 (reaffirming *Corbin* elements).  Premises liability involves unique elements, and Texas courts sometimes refer to non-premises-liability cases as "ordinary negligence" cases.  *See, e.g., Exxon Corp. v. Garza*, 981 S.W.2d 415, 420 (Tex. App. 1998, pet. denied) ("As noted above, the case was submitted to the jury on two theories—ordinary negligence and premises liability.").

The third type of claim is based on the set of continuous, non-delegable duties that employers owe their employees.  Unlike the first two types of claims, this third type is unique to, and specifically derived from, the employment relationship itself.  *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("For decades, this Court has recognized that this duty is an implied part of the employer-employee relationship.").  The overarching principle in this area of Texas law is that "[a]n employer is not an insurer of its employees' safety at work; however, an employer does have a duty to use ordinary care in providing a safe work place." *Id.* at 117 (citing *I.M. Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995)).  Texas courts have derived several more specific duties from this overarching principle, including the duty to hire competent co-employees, to provide safety regulations, to provide needed safety equipment or assistance, to warn employees of the hazards of their employment, to supervise them, and to furnish reasonably safe instrumentalities with which employees are to work. *See Gen. Electric Co. v. Moritz*, 257 S.W.3d 211, 215 n.15 (Tex. 2008) (collecting cases); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 & n.10 (Tex. 2007) (duty to provide safe workplace, duty to hire competent co-employees, and duty to provide safety

regulations); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam) (duty to warn employees of hazards of employment and duty to provide safety equipment or assistance); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) (duty to supervise employees' activities, duty to furnish reasonably safe place in which to labor, and duty to furnish reasonably safe instrumentalities with which employees are to work), *overruled on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516-17 (Tex. 1978).

B

Against this backdrop of negligence principles, Kroger argues that Texas law precludes an employee from pursuing an ordinary negligence claim when the employee is injured by a condition of the premises.  It argues that this is the case here because Odom was injured when he slipped on ice in the parking lot.  According to Kroger, the cause of his injuries was a *condition*—ice that had naturally accumulated on the surface of the parking lot—and Odom is therefore limited to a premises liability claim as a matter of law.  Odom responds that he has only pleaded an ordinary negligence claim, not a premises liability claim.  He maintains that his injuries were caused not merely by a condition but also by acts or omissions of Kroger: Kroger's decision to hire careless or incompetent employees who directed Odom to retrieve shopping carts from an icy parking lot, its failure to remove the ice from its parking lot before ordering Odom to retrieve the carts, its failure to implement policies and procedures regarding workplace safety, and its failure to provide proper work equipment to be used in the icy conditions.

- 9 -

Odom's amended complaint alleges, in pertinent part:

> Under Texas law, an employer owes its employees the following
> non-delegable duties: (a) The duty to provide rules and
> regulations for the safety of employees, and to warn them, under
> certain conditions, as to the hazards of their positions or
> employment; (b) The duty to furnish reasonably safe
> instrumentalities with which its servants are to work; (c) The
> duty to furnish its servants with a reasonably safe place to work;
> (d) The duty to exercise ordinary care to select careful and
> competent fellow servants or co-employees.
>
> Defendant Kroger, through its agents, servants, and/or
> employees, breached these duties by: (a) Hiring the careless
> and/or incompetent employee(s) who directed Plaintiff to
> retrieve shopping carts from an icy parking lot knowing that it
> posed an unnecessary risk to Plaintiff, and without warning
> Plaintiff of those risks; (b) Failing to remove ice from its
> parking lot before ordering Plaintiff to work in the parking lot;
> (c) Failing to implement policies and procedures regarding
> workplace safety; and/or (d) Failing to provide proper work
> equipment, i.e. proper foot wear to be used in icy conditions[.]

Am. Compl. ¶¶ 18-19 (paragraph numbers omitted).  Kroger argues that regardless what

theory Odom has pleaded, Texas law limits him to a premises liability claim on these facts.

The court disagrees.[2]

---

[2]In a diversity case, absent a binding decision of the Supreme Court of Texas on an
issue of Texas substantive law, this court must make an "*Erie*-guess," i.e., a prediction under
*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), of how the Supreme Court of Texas would
resolve the issue if presented with the same case. *See, e.g., Chaney v. Dreyfus Serv. Corp.*,
595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins.
Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).  In doing so, this court is not required to be
prescient.  Instead, "[w]hen confronted with an unsettled issue of state law, a federal court
sitting in diversity must make its best effort to predict how the state courts would decide the
issue." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995) (citing *DeWeerth
v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994)).  *Erie* and its progeny require no more of
a federal court than that it conscientiously satisfy its duty to predict how the state court will

Kroger relies on the principle that "[a]droit phrasing of the pleadings to encompass design defects, per se negligence or any other theory of negligence does not affect application of premises liability law." *McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d 167, 171 (Tex. App. 1994, writ denied) (citation and internal quotation marks omitted). But Odom has done more than rely on adroit phrasing of the pleadings.[3]  Kroger ignores the fact that employers owe duties to their employees that are separate and apart from premises liability principles.[4]  These duties are derived from the employer-employee relationship itself. *See Leitch*, 935 S.W.2d at 117. The specific duties identified in Odom's amended complaint are well-established under Texas law. *See, e.g., Austin*, 731 F.3d at 424-25 ("Thus, the Texas Supreme Court has repeatedly held that an employer owes a continuous, non-delegable duty to provide its employees with a safe workplace."); *Elwood*, 197 S.W.3d at 794 ("[An employer must] warn an employee of the hazards of employment

decide a question. *Id.*

[3]Even ignoring the lack of an employer-employee relationship in the case, *McDaniel* is readily distinguishable on another basis.  In that case the plaintiffs alleged a negligent activity claim against the owner of an apartment complex where a balcony collapsed and killed an individual walking under it. *McDaniel*, 887 S.W.2d at 169.  The plaintiffs argued that they were entitled to a negligent activity instruction on the theory that the balcony had been negligently constructed.  But the undisputed evidence showed that any negligent act in constructing the balcony had occurred eight years before the accident. *See id.* at 171.  The court concluded that "adroit phrasing" of the pleadings could not overcome this undisputed evidence. *Id.*

[4]In fact, Kroger repeatedly refers to Odom's negligence claim as one of "ordinary negligence (unsafe workplace)." *See, e.g.,* D. Br. 7.  But Odom has not merely pleaded a bare-bones "unsafe workplace" claim.  He has pleaded theories that include Kroger's hiring of certain employees, its failure to implement policies and procedures regarding workplace safety, and its failure to provide proper work equipment to be used in the icy conditions.

and provide needed safety equipment or assistance."); *Farley*, 529 S.W.2d at 754 ("Among these [duties] are the duty to warn employees as to the hazards of their employment and to supervise their activities, the duty to furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work.").

Kroger does not address these employer-specific duties directly in its brief; instead, it relies on the reasoning of *Keetch* for the proposition that Odom is limited to a premises liability claim. This reliance is misplaced. In *Keetch* the plaintiff was a customer, not an employee. *Keetch*, 845 S.W.2d at 263. This distinction is material because the employment relationship alters the duties that the defendant owes the plaintiff. Although an employer owes to its employees as invitees certain duties under premises liability principles, this set of duties is not exhaustive. In addition, employers owe their employees certain continuous, non-delegable duties, such as the duties to hire competent co-employees, to provide necessary instrumentalities, and to provide safety regulations. *See, e.g., Austin*, 731 F.3d at 424-25; *Islas*, 228 S.W.3d at 652 n.10 (collecting cases). These are continuous, non-delegable duties that an owner or occupier of land does *not* owe its non-employee invitees; rather, they are derived from the employment relationship itself. Accordingly, although an employee generally cannot pursue *both* a premises defect claim and a negligent activity claim on the same facts, he has a third option: he can pursue an ordinary negligence claim on the basis of his employer's continuous, non-delegable duties (e.g., to provide necessary instrumentalities, to hire competent co-employees, to train and supervise, or to provide safety regulations).

Kroger suggests that the distinction recognized in *Keetch* between premises conditions and negligent activities forecloses Odom's argument because it is undisputed that Odom slipped on ice and was not injured by any contemporaneous activity.  To buttress its argument, Kroger relies on language, which appears in several opinions it cites, to the effect that an employer's duty to furnish employees a safe place to work is identical to or co-extensive with the duty involved in a non-employee slip-and-fall case.[5]  The court disagrees with Kroger's interpretation of the case law.  The language on which Kroger relies only applies in cases where the employee has alleged a slip and fall as a result of a dangerous condition, and nothing more.  Kroger has not shown that it applies to cases where the employee has alleged some act or omission on the part of the employer that violates the employer's *other* continuous, non-delegable duties to the employee, such as the duty to hire competent co-employees, to furnish reasonably safe instrumentalities, or to train and

---

[5]*See, e.g., Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 240 (Tex. 1955) (noting that "the nature of the duty of the landowner to use reasonable care to make his premises reasonably safe for the use of his invitees may, in all material respects, be identical with the nature of the duty of the master to use reasonable care to provide his servant with a reasonably safe place to work"); *Simon v. Johns Cmty. Hosp.*, 2008 WL 2309295, at *2 (Tex. App. June 4, 2008, no pet.) (mem. op.) ("Under such circumstances, this Court, reasoning that the employer's duty to provide a safe work place is coextensive with its standard of care to invitees generally, has imposed the elements of a premises liability cause of action."); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex. App. 1998, no pet.) ("The employer's standard of care for employees is therefore the same as the standard of care for invitees generally."); *Moore v. Weingarten, Inc.*, 523 S.W.2d 445, 448 (Tex. App. 1975, writ ref'd n.r.e) ("The duty to furnish an employee a safe place to work, in a situation involving a foreign substance upon the floor, is identical with the duty involved in a 'slip and fall' case.").

supervise employees' activities.[6]  Two underlying principles explain this result.  When an employee sues *qua* invitee, because he was injured by a condition that was not directly caused by the negligent activity of his employer and his employer did nothing else to cause the injury, he must satisfy the elements of premises liability.  But when an employee sues *qua* employee, because his employer has violated one of its continuous, non-delegable duties to the employee, he must satisfy the elements of ordinary negligence.  In this second situation, the employee need not prove the special elements of premises liability, but the employee must pinpoint a specific act or omission that violated the employer's duty of ordinary care (e.g., ordering the employee to confront a danger, hiring a careless or incompetent employee, or failing to furnish a necessary instrumentality).

Viewed together, these principles resolve any apparent tension between the language quoted above and the result here.  In a situation where an employee is injured by a dangerous condition and alleges that the employer was negligent merely because it had not prevented or addressed the dangerous condition, it makes sense to say that the employer's duty to make the workplace safe is "identical to" or "coextensive with" its duty to an invitee under premises liability principles.  But it only makes sense in that situation, where the employee

---

[6]The court previously observed this principle in its order denying Kroger's motion to dismiss.  In its motion to dismiss, Kroger advanced essentially the same position as it does here, with which the court disagreed.  The court stated that "[i]t is an oversimplification of Texas negligence law to argue that negligence claims by an employee against an employer must be based on either a contemporaneous activity theory or on a premises liability theory." *Odom v. Kroger Tex., L.P.*, No. 3:13-CV-0579-D, Order at 1 (N.D. Tex. May 21, 2013) (Fitzwater, C.J.) (internal quotation marks and alterations omitted) (citing *McCown v. U.S. Pers., Inc.*, 2006 WL 2623938, at *4 (N.D. Tex. Sept. 11, 2006) (Lynn, J.)).

has not alleged any other basis on which to hold the employer liable.

*Simon v. Johns Community Hospital*, 2008 WL 2309295 (Tex. App. June 4, 2008, no pet.) (mem. op.), illustrates this point.  In *Simon* the plaintiff was an employee who slipped at work on a foreign substance on the floor in a hallway.  *Id.* at *1.  She sued the employer, alleging negligence in failing to provide her a safe workplace.  *Id.*  But she acknowledged in her brief that "her 'entire liability case revolves on whether the substance on the floor was a dangerous condition.'"  *Id.* at *2 (quoting plaintiff's brief).  Importantly, the employee neither alleged that she was ordered to walk down the hallway nor that she was deprived of a necessary instrumentality to contend with the substance.  The court held that she was limited to a premises liability claim, but it specifically noted: "As the [defendant] observes, had there been issues in the instant case not purely dependent on the existence of this dangerous condition, and on [the defendant's] knowledge of [the substance's] presence, this would not have been a premises liability case."  *Id.* at *3 (internal quotation marks and alterations omitted).  Here, by contrast, Odom does not concede that the only cause of his injuries was the ice in the parking lot.  And he alleges that Kroger ordered him to confront a known risk without proper safeguards.  Unlike in *Simon*, there are issues in the present case that are not purely dependent on the existence of the dangerous condition.[7]  In effect, Odom

---

[7]In its reply brief, Kroger cites *Lopez v. Regent Care Center*, 2010 WL 3700180 (Tex. App. Sept. 22, 2010, pet. denied) (mem. op.).  In *Lopez* an employee slipped on a puddle of soapy water while washing dishes.  *Id.* at *1.  She sued on an ordinary negligence theory, but the trial court applied premises liability principles to her suit and granted summary judgment to the employer.  *Id.*  The court of appeals affirmed, concluding that the employer did not have actual or constructive knowledge of the dangerous condition.  *Id.* at *2.  It also held that

has invoked the second principle discussed above and is suing *qua* employee.  As a result, he is not limited to a premises liability claim merely because his allegations involve the fact that he slipped on ice in a parking lot.

This conclusion is supported by *Kroger Co. v. Keng*, 976 S.W.2d 882 (Tex. App. 1998), *aff'd*, 23 S.W.3d 347 (Tex. 2000).[8]  In *Keng* the plaintiff was an employee who normally worked behind the deli counter.  On the day of the incident, however, the store's assistant manager ordered her to move pie boxes out of the deli freezer.  *Id.* at 885.  The employee at first refused, complaining that moving boxes was not part of her normal job duties.  *Id.*  Eventually, she acquiesced, and while she was on a ladder in the freezer, several boxes fell from the top shelf and struck her back.  *Id.*  The trial court submitted the case to the jury under ordinary negligence instructions, as opposed to premises liability instructions, and the jury found for the employee.  *Id.*  On appeal, the employer argued that it owed no duty to the employee as a matter of law.  *Id.*  The court of appeals disagreed:

---

the employee was not entitled to an ordinary negligence instruction.  *Id.* at *3.  This court is not persuaded that it should alter its analysis of Texas law based on *Lopez*, which has only been cited one time, for a principle that is inapposite to this court's *Erie* prediction.  *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 672 (Tex. App. 2012, no pet.) (citing *Lopez* for proposition that foreign substance on floor can be unreasonably dangerous condition).

[8]In *Keng* the Supreme Court of Texas granted Kroger's petition for review, but it limited its review to whether Kroger was entitled to a comparative responsibility instruction as a non-subscriber under Tex. Lab. Code Ann. § 406.033.  *See Kroger Co. v. Keng*, 23 S.W.3d 347, 348 (Tex. 2000) ("We granted Kroger's petition to resolve a conflict among the courts of appeals concerning the propriety of submitting a comparative-responsibility question to the jury.").  Although the Supreme Court of Texas affirmed the court of appeals' decision, it did not address the reasoning pertinent here.

The jury found that [the employer] was negligent because it failed to furnish necessary appliances and/or materials to carry on the work requested of [the employee] in a proper condition and with reasonable safety, and it also failed to provide adequate help and/or assistance under the circumstances for the performance of required work.  Our review of the record shows that there was some evidence from which the jury could have inferred that [the employer] was negligent under the above standards . . . .  The jury could have found negligence in [the employer's] order to do this particular work knowing that [the employee] was untrained in that area.  The jury could also have found negligence in [the employer's] failure to adequately inspect the condition of the boxes and/or adequately explain how they could be removed in a safe manner or by failing to ensure that adequate assistance was available.  The jury could have determined that [the employer] did not furnish adequate lifting equipment and appliances to carry out the task of removing heavy boxes from the top shelf . . . .  A combination of the above factors could reasonably have been viewed by the jury as negligence on the part of [the employer].

*Id.* at 886.  Although it was possible to frame the cause of the plaintiff's injury as a condition of the premises (boxes on a shelf), the court of appeals did not hold that the employee was limited to a premises liability claim.  Instead, the court recognized several theories—any of which could have supported the jury verdict—that were based on ordinary negligence principles as they are applied in the employer-employee context.  The reasoning of *Keng* applies to the instant case because, according to Odom, he was ordered to do particular work under dangerous conditions without proper policies and procedures in place and without adequate instrumentalities.

*Austin* supports this conclusion as well.  In that case, the Fifth Circuit did not hold as a matter of law that the plaintiff was *limited* to a premises liability claim.  The court

remanded the case to the district court to consider whether the employee's necessary instrumentalities theory was sufficient to support a stand-alone ordinary negligence claim. *See Austin*, 731 F.3d at 433. Although the panel noted that it agreed with the district court's conclusion that the plaintiff's "injuries [were] properly conceived as resulting from a condition on the premises rather than an ongoing activity," *see id.* at 432 (internal quotation marks omitted), that language only implies that Odom is not permitted to proceed with a "pure" (i.e., non-employee) negligent activity theory. Odom is not attempting to rely on such a theory; rather, he is relying on the set of employment-specific duties that an employer owes its employees. The plaintiff in *Austin* invoked one of these principles by alleging that the defendant violated its duty to provide necessary instrumentalities, and the panel remanded to the district court to determine whether the plaintiff's necessary instrumentalities theory was sufficient to support a stand-alone ordinary negligence claim. *See id.* at 433. The fact that the court remanded to the district court on this issue, even though it recognized that the plaintiff's injury "result[ed] from a condition on the premises," *id.* at 432, supports the conclusion that Odom is not limited to a premises liability claim—despite the fact that his injuries were caused by slipping on ice in a parking lot.

Kroger disputes this reading of *Austin*, arguing that Odom's status as an employee does not alter Kroger's duty to him. It argues that *Smith v. Shofner Auto Repair, Inc.*, 2009 WL 975999 (Tex. App. Apr. 9, 2009, no pet.) (mem. op.), is controlling on the issue. The court disagrees. In *Smith* an employee sued his employer after he slipped on ice in the employer's parking lot while attempting to move a vehicle at the employer's request. *Smith*,

2009 WL 975999, at *1.  The trial court granted summary judgment to the employer on the ground that ice was not an unreasonably dangerous condition and therefore the employer had no duty to protect the employee from the ice.  *Id.*  On appeal, the employee argued that, because he was an employee, the employer owed him a duty to provide a safe workplace in addition to the duty owed to him as an invitee.  *Id.* at *2.  The court of appeals rejected this argument on the ground that an employer has no duty to warn an employee of dangers that are commonly known or already appreciated by the employee.  *Id.*  Because the danger posed by ice was commonly known and appreciated by the employee, the court of appeals affirmed the trial court, holding that the employer had no duty to the employee with respect to the ice. *Id.*

For three reasons, the court is not persuaded that the Supreme Court of Texas would view *Smith* as establishing the proposition that Odom is limited to a premises liability claim in this case.  First, the plaintiff in *Smith* pleaded a premises liability claim.  *See id.* at *1 ("[The plaintiff] appeals from the trial court's grant of summary judgment on his premises liability claim against [the defendant].").  The court specifically noted that, "[i]n his petition, [the employee] argued that he was injured 'as a result of a dangerous condition' on [the defendant's] property."  *Id.* (quoting petition).  Here, Odom does not plead a premises liability claim, expressly disavows premises liability as the basis for his theory, and explicitly invokes a set of continuous, non-delegable duties that are more specific than a bare-bones unsafe workplace claim.  And Odom does not concede that he was injured merely as a result of a dangerous condition.

Second, *Smith* does not address the fact that the plaintiff was injured on the ice while performing work at the employer's request.  The court recites this fact in the beginning of its opinion, but it does not discuss it again.  *See id.*  Because the court's reasoning does not address this fact, the holding in *Smith* does not conclusively establish that the employer's request would have made no difference under an ordinary negligence theory.  The plaintiff in *Smith* pleaded and pursued a premises liability claim, so the question was not before the court.

Third, in *Smith* the court reasoned that "an employer has no duty to warn an employee of dangers that are commonly known or already appreciated by the employee."  *Id.* at *2.  Here, Odom's theory is not based on an alleged failure to warn; rather, his theory is based on a failure to hire competent co-employees, a failure to remove ice from the parking lot before ordering Odom to work in the parking lot, a failure to implement policies and procedures regarding workplace safety, and a failure to provide proper work equipment to be used in icy conditions.

Not only is *Smith* distinguishable on these grounds, but Kroger's application of *Smith* would require results that are at odds with Texas law.  If *Smith* establishes that Odom is limited to a premises liability claim because his injuries were caused by a dangerous condition, then each case in which an employee alleges a violation of the employer's duty to provide necessary instrumentalities would be converted into a premises liability case.  This

is because the failure to provide necessary instrumentalities is a form of "nonfeasance"[9]—
it is a failure of the employer to act, either to make some condition of the workplace safe or
to provide the employee with something to address the unsafe condition.  In such cases, an
employer's decision not to provide the employee with necessary instrumentalities does not
of itself cause the injury.  Rather, the employee's injury always results from the *condition*—a
condition that a reasonable employer would have addressed and made safe in some way.

Suppose, for example, that a fire started in a store.  The employer knew about the fire
but neither contacted the fire department nor made any effort to extinguish it.  Instead, the
employer ordered one of its employees to put the fire out.  After considering his options for
several minutes, the employee, fearing that he would lose his job if he refused, attempted to
extinguish the fire and was badly burned in the process.  He sued the employer on an
ordinary negligence theory, alleging that the employer violated its duties to provide him with
necessary instrumentalities to extinguish the fire.  Under Kroger's theory and its application
of *Smith*, the employee would be limited to a premises liability claim: a condition (the fire)
caused the employee's injuries, and the activity (the directive to extinguish the fire) did not
occur contemporaneously with the injury.  Under *Smith* the employee would not be able to
recover because the risk posed by the fire was known to the employee and commonly
appreciated.  *Cf. Smith*, 2009 WL 975999, at *2 ("Because the evidence demonstrated that

---

[9]In *Del Lago* the Supreme Court of Texas explained that "premises liability
encompasses a nonfeasance theory based on the owner's failure to take measures to make the
property safe."  *Del Lago*, 307 S.W.3d at 776.

the icy conditions were commonly known and were appreciated by [the plaintiff], and because the danger of ice is commonly appreciated, [the defendant] had no duty toward him with respect to the ice."). Kroger's theory would have the effect of immunizing employers from liability when they order their employees to confront obviously dangerous conditions. In *Austin* the Fifth Circuit disapproved of this result:

> [The plaintiff] argues that a warning cannot absolve an employer from liability if the employee must confront a dangerous defect anyway. We agree. In that narrow context, an employer must either make the premises safe or provide its employee with the necessary instrumentalities to avoid or remedy the defect himself.

*Austin*, 731 F.3d at 429-30. Although the language quoted above was offered in the context of analyzing the employee's premises liability claim, it applies with equal force here. Indeed, the Fifth Circuit's statement that "an employer must either make the premises safe or provide its employee with the necessary instrumentalities" is commonly used to describe an employer's duty under ordinary negligence principles. *See, e.g., Farley*, 529 S.W.2d at 754 (noting that employer owes "duty to furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work" in ordinary negligence case). And it is well established that Texas courts routinely apply ordinary negligence principles rather than premises liability principles when the employee alleges that the employer violated its duty to provide a safe workplace or its duty to provide necessary instrumentalities. *See, e.g., Werner*, 909 S.W.2d at 869 ("Although an employer is not an insurer of his employees' safety at work, an employer does have a duty to use

ordinary care in providing a safe work place."); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993) ("The standard of conduct required of the employer is ordinary care based on general negligence principles."); *Gibbs v. ShuttleKing, Inc.*, 162 S.W.3d 603, 612 (Tex. App. 2005, pet. denied) ("The test whether the employer has met its obligation is the exercise of ordinary care based on general negligence principles.").

*Austin* implies that Odom may have been able, in theory, to pursue a premises liability claim on these facts, but he did not. He has explicitly disavowed a premises liability theory, and he posits that he has only pleaded and is only pursuing an ordinary negligence claim. His theory is that he was ordered by his employer to confront a known risk without proper safeguards. *Austin* does not foreclose this claim, and Texas cases, such as *Keng*, support it.[10]

V

Kroger argues in the alternative that it is entitled to summary judgment on Odom's ordinary negligence claim because it owed no duty to warn him of the hazards posed by the ice since he fully appreciated the danger. Odom responds that his theory is not predicated on an alleged failure to warn, and that because he was ordered to confront the danger posed by the ice in the parking lot, the fact that he appreciated the risk does not negate any of Kroger's duties to him. In essence, Odom maintains that his subjective knowledge of the danger cannot negate Kroger's duties to him under these circumstances.

---

[10]Kroger also argues that Odom has failed to produce evidence sufficient to create a genuine issue of material fact under a premises liability theory. Because the court holds that Odom is not limited to a premises liability claim, and because Odom has expressly disavowed such a claim, the court does not reach this argument.

Kroger is not entitled to summary judgment on the ground that Kroger owed no duty to warn Odom of the dangers posed by the ice.  As discussed above, Odom's theory is not predicated on a failure to warn.  Although his complaint alleges that Kroger breached its duties by, *inter alia*, "[h]iring the careless and/or incompetent employee(s) who directed Plaintiff to retrieve shopping carts from an icy parking lot knowing that it posed an unnecessary risk to Plaintiff, and without warning Plaintiff of those risks," Am. Compl. ¶ 19, it is clear that Odom is not alleging a stand-alone failure-to-warn claim.  Odom identifies four theories in support of his negligence claim, none of which depends on a failure to warn: (1) Kroger hired the careless or incompetent employees who ordered Odom to retrieve the shopping carts in the face of an unnecessary risk; (2) Kroger failed to remove the ice from its parking lot before ordering Odom to confront the danger; (3) Kroger failed to implement policies and procedures regarding workplace safety; and (4) Kroger failed to provide proper work equipment to be used in icy conditions.

Much like it did on appeal in *Austin*, Kroger relies on *Elwood* and *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793 (Tex. 2008) (per curiam), for the proposition that Kroger had no duty to Odom with respect to the ice.  But the Fifth Circuit has already considered and rejected this interpretation of Texas negligence law, reasoning that *Elwood* and *Goss* were cases where the employees

> made a voluntary decision to engage in risky behavior unnecessary to the performance of their duties, such as placing a hand in the doorjamb of a car . . . [or] stepping over a lowboy cart in a crowded store room[.]  While the employees may have engaged in these activities in the course and scope of their work,

- 24 -

> nothing inherent in their job obligations required them to take
> the risks at issue.

*Austin*, 731 F.3d at 429.  Here, by contrast, there is evidence that Odom was ordered to

retrieve the shopping carts from the parking lot, that he was attempting to be careful while

walking to the shopping carts, and that Kroger considers this type of activity an essential part

of the job.[11]  There is also evidence that Yates, the store's co-manager who ordered Odom

to retrieve the shopping carts, knew that the ice posed an unsafe condition but ordered him

to do it anyway.  Under these circumstances, when the complaint does not center on an

alleged failure to warn, and the employee must confront a danger as part of fulfilling his

responsibilities to a non-subscribing employer, the "employer must either make the premises

safe or provide its employee with the necessary instrumentalities to avoid or remedy the

defect himself."  *Id.* at 430.  Accordingly, Odom's subjective knowledge of the ice does not

negate Kroger's duties in this case because his "subjective awareness of the hazard is

relevant only to comparative negligence or assumption-of-the-risk—affirmative defenses

unavailable to non-subscribers under [§] 406.033(a) of the Texas Labor Code."  *Id.* at 428;

*see also id.* at 430 ("Because [§] 406.033(a) . . . takes the employee's own negligence off of

the table for a non-subscriber like Kroger, we hold that the district court erred in relying on

[the employee's] subjective knowledge of the spill to grant summary judgment in Kroger's

---

[11]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

favor.").

Finally, Kroger appears to argue in its reply brief that it is entitled to summary judgment on Odom's negligence claim because Odom has not adduced sufficient evidence that proper equipment, if provided by Kroger, would have reduced the risk of slipping on the ice. But Kroger neither moved for summary judgment on this basis nor raised the argument in its opening brief. "[S]eeking summary judgment on a ground not raised in the motion but instead raised for the first time in a reply brief is impermissible." *State Farm Fire & Cas. v. Whirlpool Corp.*, 2012 WL 2422922, at *2 (N.D. Tex. June 27, 2012) (Fitzwater, C.J.) (quoting *Mendez v. Caterpillar, Inc.*, 2012 WL 90492, at *5 (W.D. Tex. Jan. 11, 2012)); *see also Johnson v. SBC Advanced Solutions, Inc.*, 2004 WL 1151650, at *6 (N.D. Tex. May 21, 2004) (Lindsay, J.) (concluding as a matter of law that defendant was not entitled to judgment on plaintiff's retaliation claim because "[a]lthough [defendant] moves for summary judgment on [plaintiff's] retaliation claim in its reply brief, the court cannot consider an argument raised for the first time in a reply brief").

Because Kroger does not raise any other ground for summary judgment on Odom's negligence claim, the court holds that Kroger is not entitled to summary judgment on that claim.

VI

Kroger also moves for summary judgment on Odom's gross negligence claim, contending that there is no clear and convincing evidence of a serious likelihood of harm, that Kroger was aware of such a risk, or that Kroger disregarded such a risk with a conscious

indifference to Odom's welfare.  Odom does not address his gross negligence claim in his brief, and, as a result, neither responds to Kroger's arguments nor points to any supporting evidence in the record.

Although Odom's failure to respond does not, of course, permit the court to enter a "default" summary judgment on this claim, the court is permitted to accept Kroger's evidence as undisputed.  *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.).  Moreover, Odom's failure to respond means that he has not designated specific facts showing that there is a genuine issue of fact for trial on his gross negligence claim.  "A summary judgment nonmovant who does not respond . . . is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence."  *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)); *see also Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.").  Because Kroger has pointed to the absence of evidence to support essential elements of Odom's claim, and Odom has not adduced evidence that would permit a reasonable jury to find in his favor, the court dismisses Odom's gross negligence claim with prejudice.

- 27 -

* * *

For the reasons explained, the court grants Kroger's motion for summary judgment

as to Odom's gross negligence claim and denies it as to his negligence claim.

**SO ORDERED.**

February 14, 2014.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE